**ST. PAUL FIRE AND MARINE INSURANCE CO., Plaintiff,**

v.

**GRINNELL BROTHERS, Defendants.**

**Civ. No. C 68-358.**

United States District Court, N. D. Ohio, W. D.

March 30, 1971.

H. C. Moan, Moan & Andrews, Toledo, Ohio, for plaintiff.

William Kroncke, Konop, Kroncke & Darcangelo, Toledo, Ohio, for defendants.

OPINION

DON J. YOUNG, District Judge.

This case which was submitted on the issue of liability only, and was tried to the Court without a jury on March 8, 10, and 11, 1971, arises out of a fire which occurred in the late afternoon or early evening of May 9, 1968. The fire commenced in a storage and utility room on the premises occupied by a store of the defendants in the Westgate Shopping Center in Toledo. Smoke, heat, and water spread to the surrounding stores, causing very considerable damage. The plaintiff insurer of one of these stores paid claims and brings this action as subrogee of the store owner. It is alleged that the fire started and became serious as the result of various acts of negligence on the part of the employees of the defendants.

The evidence consisted of the testimony of various employees of the defendants who had worked at one time or another in the Westgate store, including some, but not all, of the employees present when the fire broke out; officers of the Fire Prevention Bureau of the Toledo Fire Department; various building inspectors of the City of Toledo; and some expert witnesses. There were a considerable number of photographs, documents, and physical exhibits offered in evidence.

The defendants moved for a directed verdict at the close of plaintiff's case. The Court reserved its ruling upon this motion, which was renewed at the close of the defendants' case and again at the close of all the evidence. Although the matter is a close one, if the evidence and all of the inferences which might arise

from it are considered in the light most favorable to the plaintiff, it is possible, by stretching things to the utmost, to say that it was sufficient to put the defendants upon their proof, and the motions are therefore overruled.

Coming then to consider the case upon its merits, but without discussing the evidence in detail, it must be stated that the evidence was very unsatisfactory, and consisted far more of the discussion of possibilities than of probabilities. The various city officials whose duty it was to investigate and determine the cause of the fire worked with little or no coordination, did their work perfunctorily or poorly, contradicted each other, had failures of memory, and lost or destroyed important pieces of evidence. Even though most of them were well qualified as expert witnesses, and were in agreement in their conclusions as to the cause of the fire, their conclusions are of little probative value because of the faulty methods by which they were reached.

The plaintiff's contention, based upon the testimony of the various city officials, was that the defendants' employees had installed in the storage room certain improvised wiring, consisting of a two hundred watt bulb in a reflector with a metal clamp, attached to an upper shelf upon which were stored old bills and receipts, part of the office records. In addition there was a light duty extension cord, of a type of wire referred to as "zip cord". Both of these were plugged into what was referred to as a "cube tap" which was screwed into a wall socket near one of the doors to the storage room. After the fire, the remains of these devices were found on or near the shelf. The extension cord was broken off a few inches from the cube tap, and the ends of the wires appeared to be melted. This indicated to the experts that the wires had been burned off by a short circuit. The fire was said by the experts to have started in the area where these wiring devices were located.

The testimony of the employees who were present when the fire started agreed only in that when it was first seen, it was a considerable blaze. One employee said it was all along the shelf whereon the electric extensions lay after the fire. Another said it was billowing down over the furnace.

Although the complaint alleged delay in calling the fire department while the employees made a vain attempt to extinguish the fire, the evidence totally failed to support these allegations. One employee told the switchboard operator to call the fire department within fifteen seconds after the fire was discovered, and then ran to the store next door and placed another call to the fire department herself. Another employee tried to fight the fire with a fire extinguisher immediately after it was discovered, but it was a large and furious blaze already. His effort was in vain, but in no way delayed or impeded the giving of the alarm.

In order to find the defendants guilty of actionable negligence, it would be necessary to find first, that it is negligence to use extension cords and extension lamps, and second, that the fire was in fact started by a short circuit in the extension cord. In order to make the second finding, it would be necessary to eliminate any other probable cause of the fire.

There was considerable evidence introduced to show that the furnace which was located in the storage room was operating defectively, in that it would not start or stop as it should, and that a repairman had been called and worked on it the day before the fire. The furnace was so completely demolished by the fire that none of the Fire Prevention Bureau men, or the city electrical and furnace inspectors, even examined the electrical controls of the furnace, or what remained of them. The furnace inspector determined only that the furnace blower was not operating at the time of the fire, but whether this was because the controls had not turned it on, because of the outdoors temperature, which was in

the seventies, or because the controls burned out, is a matter of pure speculation. Thus the furnace can in no way be eliminated as the source of the fire, any more than it can be found to be the source of the fire.

At the close of all the evidence, it is impossible to say what started the fire. It is at least as reasonable to say that it started in the furnace controls or wiring as in the improvised wiring of the clamp-on lamp and zip cord. There was much testimony as to what could have happened to cause the fire, but none from which the Court can determine what probably did cause the fire.

Even if it be assumed that for some reason, perhaps a jarring or shaking of the shelf, the zip cord or lamp cord became short-circuited and caused the fire, the use of such appliances is not forbidden by law, and in fact they are widely used. True, the Fire Prevention Bureau disapproves of using what it calls "improvised wiring", extension cords, over long periods of time, instead of having permanent wiring installed, but there was no showing of how long the improvised wiring here in use had been in the position in which it was found after the fire. Most of the evidence on this point was negative, and of no probative force. The only positive testimony was that the clamp-on light had been in place for a little over a year before the fire. No evidence was introduced to show what would be a reasonable length of time to use temporary wiring before converting to permanent wiring, or that a year is an unreasonable time.

The Court can come to no other conclusion than that the evidence, taken as a whole, fails to show that the fire was the result of any actionable negligence on the part of the defendants.

The defendants are entitled to judgment in their favor upon the issues joined in this case. They may prepare and submit an entry expressive of these conclusions, in accordance with the Rules of this Court.

This opinion will serve as the Court's findings of fact and conclusions of law.